UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| SANDRA HALL, SPECIAL ADMINISTRATOR OF THE ESTATE OF CHELSEA WEEKLEY, Deceased, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | Cause No. 3:13-cv-00914-SMY/DGW |
| | ) | |
| ANN MARIE FLANNERY, M.D., RAGHURAM SAMPATH, M.D., and SSM CARDINAL GLENNON CHILDREN'S HOSPITAL, | ) ) ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants Ann Marie Flannery, M.D., Raghuram Sampath, M.D., and SSM Cardinal Glennon Children's Hospital states as follows for their Memorandum of Law in Support of their Motion for Protective Order pursuant to Federal Rule of Civil Procedure 26:

### INTRODUCTION

The Federal Rules of Civil Procedure are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." F.R.C.P. 1. "Cooperation between opposing counsel is entirely consistent with a lawyer's obligations to his or her client, and ensures the efficient and rational resolution of civil litigation" as contemplated by the rules. Marino v. Usher, 2014 WL 2116114, *7 (E.D.Pa. 2014). As all lawyers and judges know, civility and cooperation are necessary to the proper functioning of our judicial system.

In this case, however, the orderly and efficient resolution has been hindered by the failure of Plaintiff and her counsel to reasonably limit discovery in accordance with F.R.C.P. 26 and

1

cooperate with counsel for Defendants in securing said discovery without undue burden and expense. As set forth below, Plaintiff has engaged in overly broad discovery on irrelevant collateral issues which have no relationship to the matters to be decided at trial. Plaintiff has most recently demanded the deposition of the representative verifying interrogatory answers on behalf of SSM and served a fourth request for production which, like prior requests, seeks irrelevant information. Because the discovery repeatedly sought by Plaintiff is unrelated to any relevant or material issue in this case, a protective order is warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a medical malpractice case. Plaintiff is the mother of a patient, Chelsea Weekley who died four days following the performance of surgery at SSM Cardinal Glennon Children's Hospital in St. Louis, Missouri on July 20, 2011. Defendants Dr. Flannery and Dr. Sampath were, respectively, the attending physician and resident who participated in the surgery performed on decedent and provided care during her overnight hospitalization. Plaintiff's Third Amended Complaint, as supported by the testimony of her retained neurosurgery expert, alleges various deficiencies in the care provided to Ms. Weakley by the Defendants.

Plaintiff's Third Amended Complaint primarily charges the physician Defendants – Dr. Flannery and Dr. Sampath – with negligence in the care provided decedent. The only allegations which potentially implicate any non-physician employees, such as nurses, are the following:

> ¶ 9(a)  Cardinal Glennon's agents and representatives failed to obtain
>          informed consent and/or authorization from decedent prior to
>          performing surgery;

2

¶ 9(m)  Cardinal Glennon's agents failed to monitor decedent and/or record findings as to her condition for approximately three hours prior to her discharge; and

¶ 9(n)  Cardinal Glennon's agents failed to provide adequate discharge instructions to decedent and those accompanying her regarding symptoms of seizure activity.[1]

It should further be noted that Plaintiff's sole standard of care expert is a neurosurgeon who admits he is not qualified to give standard of care opinions regarding nursing care. See excerpt from the deposition of William Sprich, M.D., pp. 128, l. 5 – 129, l. 7, attached hereto as *Exhibit A*. There will be no expert testimony that a nurse or, in fact, any health care provider other than a neurosurgeon deviated from the standard of care.

This case has since devolved into an abuse of the discovery process by Plaintiff for no other purpose than to harass the Defendants and increase their litigation costs. The Court has been engaged by Plaintiff to resolve discovery disputes on multiple occasions. In particular, in the two most recent conferences, the Court has limited the scope of Plaintiff's overly broad discovery requests and untimely request for a corporate designee deposition. In addition, during the hearing of July 9, 2014, the Court acknowledged that Plaintiff was "asking for the universe" and "just using a shotgun approach" when he entered an order limiting the scope of her discovery requests. See excerpt from transcript of Discovery Dispute Hearing of July 9, 2014, pp. 52, l. 24 – 53, l. 5, attached as *Exhibit B*.

---

[1] Cardinal Glennon does not admit, by referencing these allegations, that nurses or other non-physician staff are required to do all of the items alleged, such as secure informed consent or identify appropriate discharge instructions. These items are merely referenced for purposes of defining the scope of potential discovery relative to non-physician employees and agents of the hospital.

Undeterred by the Court's admonitions, Plaintiff has continued to engage in overly broad and abusive "shotgun approach" discovery tactics. Plaintiff's counsel has demanded unilateral deadlines, refused to cooperate in resolving discovery disputes, and generally impeded the orderly and efficient resolution of this lawsuit. Plaintiff continues to demand, for example, manuals and documents related to the use of Cardinal Glennon's electronic medical record software. For these reasons, Defendants request a protective order precluding Plaintiff from taking the deposition of Cristine McKenna and limiting Plaintiff's discovery to information and documents reasonably related to the issues to be resolved at trial.

## LAW AND ARGUMENT

### A.   Plaintiff Has Improperly Demanded A Deposition Of The SSM Employee Who Verified SSM Cardinal Glennon's Answers To Interrogatories

Plaintiff served an eighteen part interrogatory on SSM Cardinal Glennon in July, 2014. SSM Cardinal Glennon responded to this interrogatory and thereafter provided a verification executed by Cristine McKenna on its behalf. See Defendant's Answer to Plaintiff's Supplemental Interrogatory attached as *Exhibit C*. The information provided in the response includes that secured from records, employees of SSM Cardinal Glennon, and additional information from the software vendor who services SSM Cardinal Glennon. Id. It is not based on Ms. McKenna's personal knowledge.

By letter dated August 25, 2014, Plaintiff's counsel, Rhonda Fiss, requested the deposition of Ms. McKenna regarding her "investigation and subsequent verification" of the interrogatory. See August 25, 2014 correspondence from Rhonda Fiss attached as *Exhibit D*. Ms. McKenna has never been identified as a witness to any event in this case or as someone with

knowledge regarding the underlying medical treatment.[2] This request is improper and the Court should prohibit Plaintiff from taking this deposition.

A corporate officer or employee responding to interrogatories need not have personal knowledge of all of the facts and information reflected in the answers. In re Folding Carton Antitrust Litigation, 76 F.R.D. 417, 419 (N.D. Ill. 1977). "The rules require that the corporation select an officer or employee to gather and obtain from books, records, other officers or employees, or other sources, the information necessary to answer the interrogatories and sign them on behalf of the corporation." Id. In Jiminez-Carillo v. Autopart Intern., Inc. the Plaintiff sought to depose the corporate officers who verified interrogatories on behalf of the Defendant because they should have knowledge of the underlying incident or "personal knowledge as to the responses they provided or other areas of inquiry that may lead to relevant evidence, such as . . . who they spoke to when responding to the interrogatories [and] other documents they referred to in their responses." 285 F.R.D. 668, 669 (S.D. Fla. 2012). The District Court denied the Plaintiff's Motion to Compel Depositions and found that a protective order would be proper as corporate officers are not subject to deposition merely because they verified interrogatory answers. Id. at 670.

Plaintiff, similarly, should be prohibited from taking the deposition of Ms. McKenna in the instant case. Ms. McKenna merely verified the answer to the interrogatory and has no personal knowledge of the underlying facts. Accordingly, Defendants are entitled to a protective order precluding Plaintiff from taking Ms. McKenna's deposition.

---

[2] Defendants state that Ms. McKenna will not be called as a witness at trial.

5

**B.     Plaintiff's Third Supplemental Request For Production Seeks Irrelevant Material
         And Is Representative Of Continued Efforts To Harass Defendants And Increase
         The Burden And Expense Imposed By This Litigation.**

Defendants are entitled to a protective order under Rule 26 limiting the scope of

Plaintiff's discovery. Plaintiff has repeatedly engaged in burdensome "shotgun" approach

discovery tactics and made no meaningful attempt to limit her requests in accordance with FRCP

26(b). Further, as detailed below, prior attempts to resolve earlier discovery disputes have been

futile and yielded no cooperation from Plaintiff's counsel.

**1.     Prior Discovery By Plaintiff**

**(a)     Plaintiff's First Supplemental Request For Production**

On February 27, 2014, Plaintiff served her First Supplemental Request for Production on

SSM Cardinal Glennon. See Plaintiff's First Supplemental Request for Production attached as

***Exhibit E***. Among the requests made, Plaintiff sought all policies and procedures in effect at the

hospital in July, 2011, and "each and every document" for the Department of Neurosurgery, that

sets forth any procedures, guidelines, rules, and/or policies. See ***Exhibit E***. Cardinal Glennon

timely served objections to Plaintiff's overly broad discovery requests and made multiple

unsuccessful attempts to narrow the scope of these requests such that they were less obtrusive

and consistent with the scope of discovery defined by Rule 26. See correspondence from Mariel

Taylor to Rhonda Fiss dated May 13, 2014, attached hereto as ***Exhibit F*** (offering to search "if

you can identify a specific topic on which you are seeking Cardinal Glennon's policies and

procedures); correspondence from Mariel Taylor to Rhonda Fiss dated May 23, 2014 (pages 2-

3), attached hereto as ***Exhibit G*** ("I have proposed several times that, if you appropriately and

meaningfully identify the topics in which you are interested, Cardinal Glennon can attempt to

6

search for and identify relevant policies."). Ultimately it required a discovery dispute conference and Court order to reasonably narrow Plaintiff's discovery requests.

### (b) Plaintiff's Second Supplemental Request For Production

On July 22, 2014 Plaintiff served her Second Supplemental Request for Production on SSM Cardinal Glennon. See Plaintiff's Second Supplemental Request for Production attached as *Exhibit H*. This request seeks information unrelated to any substantive issue in this case. Examples of the irrelevant information sought include the following:

1.   *Any and all manuals, guides, instructional materials, or other documents that explain how to enter, edit, and delete inpatient medical records charted with the Epic system in July, 2011.*

A response to this request would require every document related to the use of every different version of Epic (technically referred to as modules) in each department. The use of charting software will vary from one department to the next depending on the type of practice within the department (surgery, laboratory, intensive care, etc.). This discovery is overly broad and needlessly burdensome. Further, it does not tend to prove or disprove any disputed issue in this case.

5.   *The complete list of Epic user ID numbers, names and addresses, for every persons [sic] employed at Cardinal Glennon from July 14, 2011 through August 1, 2011, who entered information into the electronic medical records for surgical patients, including Chelsea Weekley.*

Similarly, this request basically requires the production of identifying information for every clinical employee at Cardinal Glennon Children's Hospital. Alternatively, it would require a review of hundreds or thousands of patient medical charts to determine who, during the

7

requested time period, was a surgical patient and by whom each such patient was treated. This request similarly is not reasonably calculated to lead to the discovery of admissible evidence.

Defendant made timely objections and responses to these requests.

### (c)  The Deposition Of Anne Stuckel

Plaintiff, on July 22, 2014, also sent counsel for Defendants a copy of a subpoena directed to Anne Stuckel of SSM Integrated Health Technologies. See subpoena to Anne Stuckel attached as *Exhibit I*. The subpoena referenced a deposition date of August 11, 2014. For reasons which have never been made known to Defendants, this subpoena was never served on Ms. Stuckel.

By email sent on August 7, 2014, counsel for Defendants contacted counsel for Plaintiffs regarding this subpoena. See August 7, 2014 email from Ryan Gavin to Rhonda Fiss attached as *Exhibit J*. In addition to confirming that there would be no deposition, Plaintiff's counsel was advised that Ms. Stuckel did not know anything about the case and was not the best person to discuss the software used by Cardinal Glennon. Counsel further offered to produce a corporate designee to address the alleged "deleted scan" presumed to be the reason for the deposition, or to discuss ways to provide whatever information was sought. In response, a couple of hours later, counsel was advised by an employee of Ms. Fiss that "Rhonda is in trial-she said she would get right back to you early tomorrow morning." See August 7, 2014 email from Fiss Law Office to Ryan Gavin attached as *Exhibit K*.

Counsel for Defendants did not receive an email from Ms. Fiss or her office the morning of August 8, 2014. Instead, counsel was advised by his clients that Anne Stuckel had been served with a subpoena the evening of August 7, 2014. See second subpoena directed to Anne

Stuckel attached as *Exhibit L*. The deposition was set for August 14, 2014 at 9:00 a.m. No offer or attempt had been made by Ms. Fiss to coordinate the deposition with the witness or counsel.

In response, Mr. Gavin contacted Ms. Fiss by letter dated August 8, 2014 and asked that the subpoena directed to Ms. Stuckel be withdrawn. See August 8, 2014 correspondence from Ryan Gavin to Rhonda Fiss attached as *Exhibit M*. No response was received from Ms. Fiss.

Ms. Stuckel was produced for deposition on August 14, 2014 pursuant to the subpoena. As anticipated, Ms. Stuckel was asked about the allegedly deleted lab result referenced in counsel's correspondence. She had no knowledge regarding the entry or its meaning. See excerpts from deposition of Anne Stuckel, attached as *Exhibit N*, pp. 35, l.2 – 39, l. 22. Similarly, Ms. Stuckel had no knowledge regarding the deletion of entries in the electronic medical record, the editing of entries, or how the records are printed. *Exhibit N*, pp. 18, l. 8 – 19, l. 21; 44, l. 15 – 49, l. 9; 53, l. 19 – 55, l. 1. Both Cardinal Glennon and Ms. Stuckel were subject to undue burden as a consequence of this unnecessary deposition.

### (d) Defendant's Motion For Protective Order Related To Confidential Documents.

Cardinal Glennon, in the course of producing documents ordered by the Court, identified an agreement that it deemed confidential. Accordingly, counsel for Cardinal Glennon forwarded a proposed stipulated protective order to counsel for Plaintiff on August 14, 2014. After an exchange of emails regarding the language of the protective order, counsel for Plaintiff stated that she would forward "a revised version of your proposed order for your consideration no later than close of business" on August 18, 2014. See attached email correspondence dated August 15, 2014 attached hereto as *Exhibit O*. Plaintiff's counsel was also advised on August 15, 2014 that Cardinal Glennon would file its Motion for Protective Order on that day. See attached email correspondence dated August 15, 2014 attached hereto as *Exhibit P*.

When the following Monday arrived, counsel for Plaintiff did not forward a revised version of Defendant's proposed protective order or otherwise make any meaningful effort to discuss her concerns. Instead, Plaintiff filed a gratuitous and incendiary pleading which began with the statement that Defendant submitted its proposed order to the Court "prior to allowing Plaintiff an opportunity to offer an alternative motion or attempted to compromise and resolve the issue without the Court's intervention." (Doc. No. 90). This is inaccurate as the proposed order was, in fact, forwarded to Plaintiff for consideration. Further, Plaintiff's proposed protective order was not so substantially different from that of Cardinal Glennon that the parties could not have reached agreement if Plaintiff had made a good faith effort to do so.

**2.     A Protective Order Is Warranted Because Plaintiff's Third Supplemental Request For Production Is More Of The Same And Seeks Information Largely Unrelated To Any Disputed Material Issue In This Case.**

Plaintiff's Third Supplemental Request for Production continues the pattern identified above and seeks irrelevant information that is unlikely to lead to the discovery of admissible evidence and neither tends to prove nor disprove any issue in dispute. The discovery sought includes the following:

3.     *The complete "error list" in OnBase's scanning software, as described on page 3 of Cardinal Glennon's Objection and Answer served on August 15, 2014.*

The "error list" referenced in this request is identified in *Exhibit C* wherein Cardinal Glennon explains that the "deleted" scan refers to the deletion of a scanning error from the software's error list. The production of the "error list," if possible, will require the engagement of internal technological support and possibly outside assistance at cost to Defendant. Further, other errors contained on this list and not identified in decedent's medical chart will likely refer to other patients. Accordingly, this is irrelevant and beyond the scope of permissible discovery.

10

4.      *The entire list containing the "results section" of the "S Interface {936105}*
        *which identifies the failed scan within Chelsea Weekley's medical chart, as stated*
        *on p. 3 of Cardinal Glennon's Objection and Answer served on August 15, 2014.*

This request, similar to the preceding one, fails to comply with F.R.C.P. 26 in that it potentially

seeks information regarding other patients and with no relationship to the medical treatment

provided to Chelsea Weekley.

        Counsel for Defendants offered to investigate whether an audit trail could be produced

and, if possible and not privileged, produce same to Plaintiff. See August 26, 2014

correspondence to Rhonda Fiss attached hereto as *Exhibit R*. The audit trail, if available, would

be expected to identify the persons who had contact with decedent's medical record and would

provide all discoverable information sought in Plaintiff's Second and Third Supplemental

Requests for Production referenced herein. Counsel for Plaintiff has not responded to this

proposal.

        Pursuant to F.R.C.P. 26(c), a protective order may be entered to protect "a party or person

from annoyance, embarrassment, oppression, or undue burden or expense." A showing that

proposed discovery is irrelevant can satisfy the "good cause" requirement of the rule. Shukh v.

Seagate Technology, LLC, 295 F.R.D. 228, 237 (D.Minn. 2013). Based on the irrelevance of the

proposed discovery and the oppressive and burdensome nature of Plaintiff's discovery tactics, a

protective order is warranted.

        As described above, this is a case involving alleged negligence in the performance of

neurosurgery and the follow-up care provided. Plaintiff's sole standard of care expert is a

neurosurgeon who admits he is not qualified to render opinions regarding health care providers

who practice outside his area of specialization. Nonetheless, Cardinal Glennon has cooperated in

11

discovery (or at least attempted in good faith to do so) and spent weeks identifying and indexing irrelevant policies and procedures related to the jobs of nurses and other non-physician health care providers. In addition, Defendant offered to cooperate with Plaintiff to identify discovery that would yield relevant information regarding the alleged "deleted" lab result Plaintiff identified in discovery. However, Plaintiff chose to take the deposition of a witness whom she was told in advance would have no knowledge.

Plaintiff is now fishing for various computer user identification names and "lists" of information which may not in any way be related to the care provided to decedent. Further, it is not clear whether these lists of unrelated patient information are accessible or by whom and could potentially require the engagement of outside personnel for assistance.

WHEREFORE Defendants Ann Marie Flannery, M.D., Raghuram Sampath, M.D., and SSM Cardinal Glennon Children's Hospital pray this honorable Court for a protective order (1) prohibiting Plaintiff from taking the deposition of Cristine McKenna, (2) ordering that Defendant not be required to respond to requests 2 through 5 of Plaintiff's Third Supplemental Request for Production (***Exhibit Q***), (3) ordering that Defendant not be required to respond to requests 1 and 5 of Plaintiff's Second Supplemental Request for Production (***Exhibit H***), (4) ordering that Plaintiff be prohibited from conducting further discovery into Cardinal Glennon's electronic health record software including, but not limited to, manuals, instructions, logs and/or lists that reference information not related to Chelsea Weekley, keyboard-level details of how information is entered or altered through the software, and similar topics or fields not specifically related to the medical record of Chelsea Weekley, and (5) for such other and further relief as this Court deems just and proper.

12

GREENSFELDER, HEMKER & GALE, P.C.

   /s/ Ryan J. Gavin
Edward S. Bott, #3126866 (LEAD COUNSEL)
esb@greensfelder.com
Mary L. ("Mariel") Taylor, # 6295494
mt@greensfelder.com
Ryan J. Gavin, #6273709
rjg@greensfelder.com
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090
(314) 241-1265 (Fax)
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the foregoing was filed electronically with the Clerk of the Court this 8th day of September, 2014, a copy mailed by first class U.S. Mail, postage prepaid, to Rhonda D. Fiss, The Law Office of Rhonda D. Fiss, P.C., 23 Public Square, Suite 230, Belleville, IL 62220, Attorney for Plaintiff.

   /s/ Ryan J. Gavin

1496873

13