IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SANDRA HALL, SPECIAL ADMINISTRATOR )
OF THE ESTATE OF CHELSEA WEEKLEY, )
Deceased, )
 )
         Plaintiff, )
 )
v. )
 )   Cause No. 3:13-cv-00914-MJR-DGW
ANN MARIE FLANNERY, M.D., )
RAGHURAM SAMPATH, M.D., and )
SSM CARDINAL GLENNON CHILDREN'S )
HOSPITAL, )
         Defendants. )

**PLAINTIFF'S BRIEF OPPOSING APPLICATION OF
MISSOURI'S PEER REVIEW PRIVILEGE AND WORK PRODUCT DOCTRINE TO
BAR OR LIMIT DISCOVERY OF CHELSEA WEEKLEY'S
ELECTRONIC MEDICAL RECORD**

**INTRODUCTION**

On October 7, 2014, the Court granted Plaintiff's request to conduct discovery pertaining to Plaintiff's allegations that Cardinal Glennon deleted, edited, and otherwise tampered with Chelsea's Weekley's medical chart on and after July 25, 2014, the day after Defendant learned of Weekley's death. According to its Brief (Doc.107), Defendant seeks to avoid production of those portions of the audit log/trail for activity that occurred after Weekley's discharge from the hospital on July 21, 2011. This portion of the audit log/trail would provide all of the legally mandated authentication for the chart activity (deletions of a lab scan and edits) of July 25, 2011 and through the course of this litigation that is missing from Weekley's record. More importantly, the audit log/trail for the period after discharge will show who, how, and when chart

1

information was deleted and changed within Weekley's record after her death, that, unlike the noted entries for activity on July 25, 2011, occurred without any indication in the record that material portions of the record had been deleted and altered. Had Plaintiff not obtained two different copies of Weekley's chart that Cardinal Glennon produced more than a year apart, these clandestined changes and deletions would never have been revealed. The reality that someone went into Weekley's record and deleted and changed it without proper authentication or even a hint on its face that these alterations had been made mandates examination of the audit log for Weekley's chart if for no other reason than to exclude destruction of additional portions of the record that will otherwise be unknown. Such unknown alterations may have occurred between the day Weekley was discharged and the date the first set of records was produced on March 12, 2012, in addition to the alterations known to have occurred between July 25, 2011 and August 20, 2013. Only a back-end audit log with accompanying metadata will provide a trustworthy record of the activity that occurred within Weekley's chart after her discharge from the hospital. This log and metadata will include the recording of data creation, identity of the accessor, time and function for each access of the record, all revisions, deletions, additions, and other activity within the record, and any unauthorized access attempts. The metadata is added security for the integrity of the medical record and audit logs generated therefrom and verifies the audit log entries with more detailed information regarding access to the record. Unlike an audit spread sheet Defendant proposes to produce for certain portions of Weekley's chart, the metadata cannot be manipulated or revised because it comes from the security portion of the data stored within the electronic record, as required by federal law. (HIPAA Security Rule, 45 CFR (A)(C) Sect. 164.308 and 164.312). A back end audit log with metadata should provide all of the missing

information in Weekley's chart as to data creation, access, and revision as it pertains to the obvious unauthenticated changes that occurred within the record, and those which may have occurred but for which there is no indication whatsoever in the record, i.e., complete deletion of lab results, imaging scans and reports, nurses recorded notes, that have likely gone undetected to date and cannot be attributed to rogue computer functioning, as previously reported by Cardinal Glennon. The audits are a critical legal functionality of each electronic system, such as the Epic system used by Cardinal Glennon, and exist for the purpose of maintaining the integrity of the electronic record, independent of any internal quality control implemented by the hospital. In other words, whether a peer review committee convenes and examines the electronic medical record of a patient or not, the medical record and the audit log/trail for that record and metadata to secure all of this information is legally required to exist and is not created and should not change simply because a peer review investigation takes place. The audit log/trail sought by Plaintiff in the case before the Court is mandated by law and not the result of any effort by Cardinal Glennon's peer review committee to improve quality of care within the hospital. As further set forth below, Cardinal Glennon wholly fails to provide any of the threshold criteria necessary for the peer review privilege to prevent disclosure of Weekley's medical record audit log.

In a transparent effort to preclude discovery of the tampering and unauthenticated revision of Weekley's record after her death, Cardinal Glennon asserts that "portions of the audit trail relate to investigations by the Cardinal Glennon Peer Review Committee and Risk Management Department" and are therefore peer review protected. This attempt to claim as privilege only those parts of the record activity that occurred after Weekley's death makes no

3

sense, because the peer review committee obviously reviewed all of Weekley's medical chart in its investigation, yet Cardinal Glennon is willing to produce the audit log for the period of Weekley's hospitalization before she died. This assertion of the privilege exclusively for the after-death portion of Weekley's chart simply makes no sense if indeed Defendant believes peer review privilege should prevent disclosure of documents merely reviewed during the peer review process.

For the reasons set forth below, Defendant's proposed peer review protection for that portion of the audit log showing activity within Weekley's medical record after her discharge and death has no merit under either the statutory provisions that create the privilege or the case law that has considered its application. In addition, Cardinal Glennon's fallback position to prevent production of the audit log/trail–the application of work product privilege - has no merit. Accessing a legally mandated medical record after the death of a patient does not morph that record into any form of "work product" that would protect disclosure of who, how, and when a deceased patient's medical record was accessed. Cardinal Glennon's position as to the application of either privilege is unsupported by the facts of the case before the Court and applicable law as to both peer review and work product privilege, as further discussed below.

## PEER REVIEW PRIVILEGE

A. By its terms the Missouri statute that created peer review privilege is not applicable to protect any portion of Weekley's electronic medical record, including the audit log/trail and supporting metadata from discovery. Mo. Rev. Stat. Sect. 537.035. 1, 2, and 4. According to Missouri's statute, peer review privilege protects from disclosure the "interviews, proceedings, findings, deliberations, reports, and minutes of peer review committees, or the

4

existence of same, regarding the health care provided any patient . . ." Peer review committees can be made up of health care professionals only, and the definition of health care professionals is limited, in terms of Weekley's care at Cardinal Glennon, to physicians, surgeons, pharmacists, nurses, and social workers. As noted by Defendant in its brief, the purpose of peer review protection is to shield the *communications made during the peer review process* . <u>Lester E. Cox Medical Centers v. Darnold</u>, 944 S.W. 3d 213, 215. (Mo. Banc. 1997). Yet Defendant takes the position that disclosing the identities, dates and times, and parts of Weekley's medical record that the Peer Review Committee reviewed ( in other words, looked at) would violate the statute. Missouri's courts do not consider a review of documents, or even reports generated within the peer review process as part of peer review proceedings. In <u>State Kirk. Miss. Hosp. Co. LLC v. Jaynes</u>, the Missouri Court of Appeals for the Western District rejected the relator's position that a report reviewed by the committee put the report in protected status. The court opined that "to include within the specific delineation of privileged peer review committee documents any information, data, reports, . . . . . commissioned or "reviewed" by a peer review committee would "rewrite the statute". <u>State Kirk. Miss. Hosp. Co. LLC v. Jaynes,</u> 328 S.W. 3d 418 (Mo. App. W.D. 2010), citing <u>Jepson v. Stubbs</u>, 555 S.W. 2d 307, 313 (Mo. 1977). The court commented further: "If the legislature had intended that all information provided to the committee be privileged, it would have expressly so said. It did not." Id., citing <u>Trinity Med. Ctr., Inc., v. Holum</u>, 544 N.W. 2d 148, 157 (N.E. 1996). It must be assumed that Cardinal Glennon's Peer Review Committee reviewed all of Weekley's record after her death, yet no peer review privilege has been asserted for any portion of the record except that which would reveal the source and method of the tampering that took place–the audit log. Missouri courts have consistently held

that where a party opposing discovery is in control of facts peculiarly within that party's knowledge and is asserting a privilege to prevent disclosure, blanket assertions of privilege (of peer review privilege and work product privilege) "will not suffice" and are insufficient to invoke its protection." State Ex Rel. Faith Hosp. v. Enright, 706 S.W.2d 852 (Mo. banc 1986), State ex rel. Plank v. Koehr, 831 S.W. 2d 926 (Mo. App. S.D. 1997).

In addition to the above, the peer review statute specifically excepts from privilege information otherwise discoverable or admissible from original sources, regardless of whether it was used in any peer review proceeding. Mo. Rev. Stat. Sect. 537.035 Sect. 4. In State Ex. Rel. Dixon v. Darnold, at issue was a claim of peer review privilege over, among other documents, a quality assurance flow sheet and risk management communications. The party opposing production of the documents claimed peer review privilege. Quoting the court's holding in Faith Hospital, the Missouri Court of Appeals for the Southern District held as follows: "Information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery or used in any proceeding merely because it was presented during proceedings before a peer review committee. . .. .." The Court went on to hold that a party attempting to prevent disclosure of an otherwise discoverable or admissible document from original sources must make a showing as to how production of the documents would violate the peer review statute using the procedure outlined in Corrigan v. Methodist Hosp., 158 F.R.D. 54 (E.D. Pa. 1994) (In State Ex. Rel. Dixon, the Court specifically remarked that Missouri's discovery Rule 56.01(b)(1) is similar to Rule 26(b) of the Federal Rules of Civil Procedure and that cases interpreting the federal rule are instructive in this area.) By implication, as taken from the Corrigan case, the party opposing production of an otherwise discoverable document must do

6

the following: 1) certify and/or testify as to the source of his/her knowledge, whether the information and documents sought derive solely from the proceedings and records of the hospital's peer review committee, and that those records and proceedings arose out of matters which are the subject of evaluation and review by those committees. Failing this showing, the privilege will not apply to prevent production of otherwise discoverable documents. Defendant can never make the above showing as to the legally mandated audit log/trail that is part of Weekley's electronic medical record. Defendant's suggestion that it be allowed to submit affidavits to explain away its deletion and unauthenticated editing of portions of Weekley's medical record is disingenuous. The peer review process cannot include destruction of a patient's record of medical treatment. For that matter, if Defendant is suggesting that persons recorded notes and impressions within Weekley's medical record as part of the peer review process, such actions are inexplicable as such communication can and should be easily recorded outside of a patient's medical record. Performing activities within the record after a patient's treatment ceased, as Defendant admittedly did, and which altered the record of patient treatment, is no less than an intentional act and should not be hidden under the guise of peer review. Further, the HIPAA Security Rule, cited above, specifically requires the hospital to have a data backup plan to establish and implement procedures to create and maintain retrievable *exact* copies of electronic protected health information. (Sect. 164.308(a)(7)(2)(A)). Changing Weekley's record permanently for peer review purposes or any other purpose after her discharge would be in direct violation of this federal regulation and should not be allowed as a shield to disclosure of otherwise discoverable information.

## WORK PRODUCT PRIVILEGE

In the case before the Court, Cardinal Glennon asserts work product protection privilege for the audit log/trail for the period after Weekley's discharge from the Hospital. In suport of its positiion, Defendant states that it performed activities within Weekley's record in anticipation of litigation. State and Federal law requires that Weekley's record be pristine and Cardinal Glennon had many other options to prepare for litigation other than altering Weekley's record. With this argument, as well as that pertaining to peer review privilege, Defendant attempts to justify otherwise inexcusable and prohibited activity within Weekley's record because to edit or eliminate entries that might tend to prove Defendant liable for malpractice. There is absolutely no valid argument that a legally required audit log for a patient's electronic health record was prepared because of the prospect of litigation. Further, Missouri law requires that "a substantial and significant threat of litigation has to exist, not merely be "in the air". Woodard v. Victory Records, Inc., No. 14 CV 1887 (N.D. Ill. 5/-21-14). Defendant argues the privilege should apply because it knew Weekley had died and had produced a copy of medical records for counsel. This is insufficient to meet the burden discussed in Woodard. In addition, documents created in the ordinary course of business or that would have been created irrespective of litigation, such as the audit log for Weekley's record, are not entitled to work-product protection. Caremark, Inc. v. Affiliated Computer Servs., Inc., 195 F.R.D at 614. Only where the document is primarily concerned with legal assistance does it come within attorney-client or work-product privileges. In other words, the "primary motivating purpose behind the creation of a document" must be to aid in possible future litigation. Grochocinski v. Mayer Brown Rowe & Maw LLP 251 F.R.D. 316, 321 ( N.D. Ill. 2008). FRCP 26 (b)(3) codifies the work product privilege and specific limits it to documents and tangible things prepared by an attorney, consultant, indemnitor, surety,

8

insurer, or agent, and is designed to protect from disclosure the mental impressions, conclusions, opinions, or legal theories of the attorney or other representative of a party concerning the litigation.  Defendant has not alleged any facts that would bring alteration of Weekley's medical records after her discharge within the scope of the work product privilege. It defies reason that Defendant argues that its deconstruction of Weekley's legally protected medical record after her discharge and death should be protected because the activities were part of a plan to avoid malpractice liability.  Defendant, however, never states that these activities convey the thought processes and mental impressions of an attorney or any other person/party whose involvement would trigger operation of the privilege.  Further, the activity performed in Weekley's record by certain personnel acting on behalf of Cardinal Glennon is not described whatsoever by Defendant nor linked in any manner to legal proceedings that would be sufficient to invoke this privilege.

## **CONCLUSION**

Defendant has made blanket assertions that peer review privilege and work product privilege should be applied to prohibit disclosure of the audit log/trail for Weekley's electronic medical record.  Although Defendant avoids presenting any facts to support these arguments, it is clear from Defendants arguments that someone went into Weekley's medical record after her death and performed "activities" (as Defendant calls them) that altered Weekley's record.  This is apparent also when comparing the two different sets of records produced by Cardinal Glennon.  However, it is incomprehensible and unacceptable that Cardinal Glennon, while conducting a peer review, would alter Weekley's records when so many other avenues of communication are available for the peer review process.  For all of the reasons set forth herein, Defendant's claims of privilege for peer review and work product should be denied.  In particular, Defendant's

request that it be allowed to redact portions of the log or produce an audit trail with affidavits should be denied, as the audit trail can be manipulated and Defendant has failed to make even a threshold showing that the peer review privilege should apply. Also, based upon Defendant's arguments, an in-camera review is not warranted and would be a waste of judicial resources. Plaintiff respectfully requests that Defendant be ordered to produce the back end audit log for Weekley's entire file, including metadata, within seven days of the Court's ruling on these issues.

              PLAINTIFF, SANDRA HALL

              s/ Rhonda D. Fiss
              Rhonda D. Fiss #6191043

              **THE LAW OFFICE OF RHONDA D. FISS, P.C.**
              23 Public Square, Suite 230
              Belleville, Illinois 62220
              Tel - 618.233.8590
              Fax - 618.233.8713
              jdd@fisslawoffice.com
              ***Attorney for Plaintiff, Sandra Hall***

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2014, I electronically filed the foregoing instrument with the Clerk of the U.S. District Court of the Southern District of Illinois using the CM/EMF system, which will send notification of such filings to all registered case participants.

\

                                        s/ Rhonda D. Fiss
                                        Rhonda D. Fiss #6191043

                                        **THE LAW OFFICE OF RHONDA D. FISS, P.C.**
                                        23 Public Square, Suite 230
                                        Belleville, Illinois 62220
                                        Tel - 618.233.8590
                                        Fax - 618.233.8713
                                        jdd@fisslawoffice.com
                                        ***Attorney for Plaintiff, Sandra Hall***