IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANDRA HALL, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ANN MARIE FLANNERY, RAGHURAM )<br>SAMPATH, and SSM CARDINAL )<br>GLENNON CHILDREN'S HOSPITAL, )<br>)<br>    Defendants. ) | Case No. 3:13-cv-914-SMY-DGW |

**ORDER**

**WILKERSON, Magistrate Judge:**

Now pending before the Court are:

1. The Issue of peer review privilege with respect to the audit log/metadata associated with Chelsea Weekley's medical chart (Docs. 107 and 108).

2. The Motion to Leave to File Motion to Extend Discovery Deadline filed by Plaintiff on December 31, 2014 (Doc. 113).

3. The Motion to Amend Complaint filed by Plaintiff on January 19, 2015 and the response thereto (Docs. 117, 123).

4. The Motion for Leave to file Reply Brief in re Motion to Amend Complaint filed by Plaintiff on January 29, 2015 (Doc. 125).

5. The Motion for Leave to file Motion to Disclose Forensic Computer Expert filed by Plaintiff on January 29, 2015, the response thereto, and a reply (Docs. 126, 127, 131).

6. The Motion to Secure Trial Testimony of Defendant, Ann Marie Flannery filed by Plaintiff on April 26, 2015 (Doc. 146).

**BACKGROUND**

On January 20, 2015, this Court held a discovery dispute conference in which a number of matters were raised related to EPIC, the software that Defendant (Cardinal Glennon) uses to create

an electronic medical chart. Plaintiff had served discovery related to EPIC including requests seeking manuals and instructional material and information related to the alleged alteration of the medical record. After receiving two allegedly "different" medical charts related to Chelsea Weekley's care, Plaintiff believes that the medical records have been improperly altered by Defendants. Implicated in Plaintiff's requests is the peer review privilege – a privilege that protects from disclosure certain information related to the peer review process, a process in which medical decisions are discussed and commented upon by medical professionals – and work product privilege. In a previous discovery dispute conference, held on October 7, 2014, the parties were directed to brief the issue of the peer review privilege and work product privilege as it relates to the metadata/audit trail associated with Chelsea Weekley's medical records.

Attached to Defendants' brief (Doc. 107) is an example of this audit trail. The information includes a date, time, the name of the person who accessed the record, their user ID and the action that was taken and the items in the record viewed (or presumably edited). Thus, the audit trail for a person on a peer review committee would include similar identifiers and an indication of what particular part of the record was viewed. In light of the nature of the peer review process, it seems unlikely that any person on a peer review committee would edit or change the medical records. There is also no evidence that any person on a peer review committee uploaded documents to Plaintiff's medical chart. Defendants argue that the peer review privilege would protect the types of information that the audit trail reveals, namely who viewed the medical charts and what particular item in the chart they viewed. Similarly, Defendants argue that the audit trail also would show similar information as to the actions taken by its risk management personnel and Defendant's representatives in anticipation of litigation. Again, it seems unlikely that any actions taken in anticipation of litigation would result in any editing (adding too or

deleting) the medical record. Defendants do not object to providing the remainder of the audit trail/metadata.

Plaintiff argues that this information, who accessed the medical chart and what they did with the information, is relevant to her theory that the chart was modified or edited in a manner inconsistent with state law. Plaintiff further argues that the peer review privilege would not protect from disclosure *any* portion of the medical record, of which the audit trail is a part. Relatedly, Plaintiff argues that because the audit trail was not solely created in anticipation of litigation, i.e. that it is automatically created and made a part the medical record, it cannot be subject to the work product privilege.

## DISCUSSION

### Peer Review Privilege and Work Product Doctrine

Federal Rule of Evidence 501 provides, in relevant part, that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In this particular case, Judge Yandle has determined that Illinois law will provide the rule of decision (Doc. 145). This decision came after the parties had briefed the issue with an understanding that Missouri law would govern the claims and defenses in this matter. As such, neither party has briefed the issue of whether Illinois law would protect from disclosure the information sought by Plaintiff. In any event, the burden of establishing that the privilege applies rests with Defendants. *Cretton v. Protestant Memorial Medical Center, Inc.*, 864 N.E.2d 288, 306 (Ill. App. Ct. 2007). *Accord Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 323 (Mo. Ct. App. 2010). "The applicability of a discovery privilege is a matter of law for the court to determine, but the question of whether specific material are part of a medical study is a factual question within that legal determination." *Menoski v. Shih*, 612 N.E.2d 834, 837 (Ill. App. Ct. 1993). Neither Missouri nor Illinois law

would prevent the disclosure of portions of the audit trail related to the peer review process or Defendant's actions in anticipation of litigation.

Illinois' Medical Studies Act provides, in pertinent part, that:

All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of the . . . committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees . . . , or their designees (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services . . . .

735 ILL. COMP. STAT. ANN. 5/8-2101 (West 2015).[1]

The types of information identified above are not discoverable or admissible. *Id.* § 5/8-2102. The purpose of the act is to encourage medical care providers to scrutinize the care given to patients in an effort to improve that care. *Richter v. Diamond*, 483 N.E.2d 1256, 1258 (Ill. 1985);

---

[1] In relevant part, Missouri's comparable statute provides:

Except as otherwise provided in this section, the interviews, memoranda, proceedings, findings, deliberations, reports, and minutes of peer review committees, or the existence of the same, concerning the health care provided any patient are privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for their release to any person or entity or be admissible into evidence in any judicial or administrative action for failure to provide appropriate care. Except as otherwise provided in this section, no person who was in attendance at any peer review committee proceeding shall be permitted or required to disclose any information acquired in connection with or in the course of such proceeding, or to disclose any opinion, recommendation, or evaluation of the committee or board, or any member thereof; provided, however, that information otherwise discoverable or admissible from original sources is not to be construed as immune from discovery or use in any proceeding merely because it was presented during proceedings before a peer review committee . . . .

MO. ANN. STAT. § 537.035 (West 2015).

*Frigo v. Silver Cross Hospital and Medical Center*, 876 N.E.2d 697, 717 (Ill. App. Ct. 2007). "[T]he Act protects against disclosure of the mechanisms of the peer-review process, including information gathering and deliberations leading to the ultimate decision rendered by a peer-review committee, but does not protect against the discovery of information generated before the peer-review process begins or information generated after the peer-review process ends." *Pietro v. Marriott Senior Living Service, Inc.*, 810 N.E.2d 217, 224 (Ill App. Ct. 2004) (*citing, in part, Webb v. Mount Sinai Hosp. & Medical Center of Chicago, Inc.,* 807 N.E.2d 1026 (Ill. App. Ct. 2004). This privilege protects the discussions, comments, and conclusions made during the peer review process, in order to facilitate frank discussion without the fear of legal or professional reprisal in an effort to improve patient outcome, but would not protect subsequent decisions or recommendations that would result from the peer review discussions or information generated prior to the peer review process. *Ardisana v. Northwest Community Hosp. Inc.*, 795 N.E.2d 964, 970 (Ill. App. Ct. 2003). Thus,

> the Act does not protect all information used for internal quality control. Information initiated, created, prepared or generated by a peer-review committee is privileged under the Act, even if later disseminated outside the peer-review process. However, a document generated in the ordinary course of a hospital's medical business, or for the purpose of rendering legal opinions or to weigh potential liability risk or for later corrective action is not privileged even if later used by a committee in the peer-review process.
>
> *Pietro*, 810 N.E.2d at 224.

This court has found no case, either from the state courts of Illinois or Missouri (or any other state for that matter), that discusses the type of data at issue in this case. Defendants seek to protect from disclosure data associated with Chelsea Weekley's medical record, a record that is otherwise entirely discoverable in this malpractice action. It should be noted that both Illinois and

Missouri have laws and regulations governing the inviolability of medical records.[2] The cases cited above, and those Missouri cases cited by the parties, all discuss the purpose of these acts, which is to protect the frank discussions that may occur in a peer review setting. It is unclear, however, whether either statute would cloak the entire process of peer review with secrecy, thus preventing disclosures of the names of the participants or the fact that the peer review process was even held.

This Court finds that the records at issue, the audit trail or metadata associated with Chelsea Weekley's medical records, are part of those records and are not governed by the peer review privilege. The data was not specifically generated by the peer review committee in order to further its discussion of Chelsea Weekley's medical care. It does not contain any information regarding the discussions that were held during the peer review committee meeting and there is no evidence that the peer review committee even looked at the audit trail during their discussions. The audit trail is not interviews or memoranda, or even minutes of any meeting: rather it only shows what person viewed portions of Plaintiff's medical and when. The audit trail is instead one aspect of Chelsea Weekley's medical record/chart that is generated in the ordinary course of the hospital's business and not for the specific use or consideration by a peer review committee. Nor can revelation of the information implicate the purposes of the peer review committee. There is no evidence or indication that the identities of committee members are kept secret nor can there be any doubt that the committee would scrutinize Chelsea Weekley's medical records. And, to the extent that Plaintiff may acquire some advantage in knowing what documents were viewed by a committee member, such an advantage is negligible because the Plaintiff has already had years to review the medical records themselves.

---

[2] *See* 210 ILL. COMP. STAT. ANN. 85/6/17 (West 2015); MO. ANN. STAT. § 334.097 (West 2015).

Defendants also argue that portions of the audit trail that record activities of the Risk Management Department and activities recorded after Plaintiff requested the chart in March, 2012 are protected by the work product privilege. Federal Rule of Civil Procedure 26(b)(3) protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial. . . ." The audit trail is not created in anticipation of litigation; it is a part of the electronic medical record and is automatically generated as a function of the program. It does not implicate the "core of attorney work product," the "'mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *See Menasha Corp. v. U.S. Dept. of Justice*, 707 F.3d 846, 847 (7th Cir. 2013) (quoting FED.R.CIV.P. 26(b)(3)(A)(ii)). Rather it is a reflection of who, when, and what a person did in relation to the electronic record. Again, any such knowledge or advantage to be gained from such information appears negligible.

For the foregoing reasons, this Court finds that the audit trail/metadata associated with Chelsea Weekley's medical record is neither covered by the peer review privilege nor the work product doctrine. Defendants shall serve upon Plaintiff, within seven (7) days of the date of this Order all portions of the audit trail/metadata that are responsive to Plaintiff's discovery requests that were raised at the January 20, 2015 hearing, namely, requests to produce 1 and 2 (that were served on August 25, 2013).

## Motions

The Motion for Leave to File Motion to Extend Discovery Deadline is **DENIED** (Doc. 113).

The Motion for Leave to File Fourth Amended Complaint is **DENIED** (Doc. 117). Federal Rule of Civil Procedure 15(a)(2) provides that leave of court is required to amend a

pleading and that "[t]he court should freely give leave when justice so requires." Leave to amend can be denied if there is undue delay, bad faith, dilatory motive, undue prejudice, futility, or if the movant has repeatedly failed to cure deficiencies. *See King v. Kramer*, 763 F.3d 635, 643-644 (7th Cir. 2014) (also noting that delay alone is insufficient to deny a motion to amend). Plaintiff seeks leave to amend her Third Amended Complaint to include additional claims of malpractice against Defendants Flannery and Cardinal Glennon, to seek punitive damages, and to add claims against SSM Integrated Health Technologies for fraud related to the medical record. Defendants only argument in response is that the motion is untimely. Implicit in the response is the prejudice to Defendants if discovery is now reopened to explore additional claims and the extensive delay that necessarily must follow from the addition of another Defendant. This Motion was filed 11 days prior to the discovery cutoff and 10 months after the deadline for filing a motion to amend (Doc. 12). The Court is mindful that discovery in this matter has been drawn out and extensive; however, Plaintiff has been aware of her claims that the medical records may have been tampered with for several months prior to the filing of this motion. A Motion for Summary Judgment already has been filed and this matter is set for trial on June 15, 2015. Allowing an amendment at this stage of the litigation of unreasonably delay resolution of this matter. Finally, Plaintiff failed to comply with Local Rule 15.1 in that the changed/added portions of her proposed pleading were not underlined. Plaintiff's related Motion to File a Reply brief is **DENIED** (Doc. 125).

The Motion for Leave to file a Motion to Disclose Forensic Computer Expert is **DENIED** (Doc. 126). Permitting Plaintiff the ability to disclose another expert in this matter, whose expertise is far removed from the core issues of this lawsuit, would unnecessarily delay resolution of this matter. The deadline for the disclosure of experts was April 15, 2014 (Doc. 12) and has not been extended. Plaintiff's reply brief also is **STRICKEN (Doc. 131)**. Plaintiff provided no

indication of what exceptional circumstances warranted the filing.

Finally, the Motion to Secure Trial Testimony is **DENIED** (Doc. 146). Defendants have represented that Dr. Ann Marie Flannery will be present at trial.

The Court notes that this matter is set for a settlement conference on May 19, 2015 (Doc. 144), a Final Pretrial Conference on May 27, 2015, and a Jury Trial on June 15, 2015 (before District Judge Staci M. Yandle).

**IT IS SO ORDERED.**

**DATED: May 1, 2015**

                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**