IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SANDRA HALL,

    Plaintiff,

vs.

ANN MARIE FLANNERY, M.D., et al,

    Defendants.

Case No. 13-cv-914-SMY-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 129). For the following reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment.

**Factual Background**

In her Third Amended Complaint, Plaintiff alleges that Defendants committed medical malpractice resulting in the death of Chelsea Weekley. The undisputed facts are that on April 5, 2011, Chealsea Weekley visited nurse practitioner Shelly Kempfer with complaints of a soft spot on the top of her head that caused dizziness, headache, and visual disturbance when bumped. (Doc. 130, Ex. A) She reported a history of being dropped on a concrete floor when she was five months old. (Doc. 130, Ex. A) A CT scan revealed a skull fracture, and after further testing and examination by a neurologist, Weekley was refer red to Dr. Flannery, a neurosurgeon at Cardinal Glennon. (Doc. 130, Ex. B). Dr. Flannery examined Weekley on June 3, 2011 and diagnosed her with an acquired skull defect and headaches. (Doc. 130, Ex. A) An MRI was ordered, and surgery was scheduled for July 20, 2011. (Doc. 130, Ex. A)

On July 20, 2011 Chelsea Weekley underwent surgery at Cardinal Glennon to repair the skull injury. (Doc. 130, Ex. A). The surgery was performed by Dr. Ann Flannery and Dr. Raghuram

1

Sampath, a resident. (Doc. 130, Ex. A) No microscope was used to perform the surgery even though the surgical area was "distorted" and required resection and dissection of brain tissue. (Doc. 138, Ex. 34) No removed brain tissue was sent to pathology after the surgery. (Doc. 138, Ex. 36) Dr. Flannery did not perform a neurological exam on Weekley after the surgery. (Doc. 138, Ex. 24) Further, there is no record that anyone examined Weekley within three hours prior to her discharge, and there are no records of her condition at discharge. (Doc. 138, Ex. 23) Plaintiff was not notified of signs of seizure to look for in her daughter, and she was not provided head trauma discharge instructions. (Doc. 138, Ex. 41) Weekley was discharged on July 21, 2011. (Doc. 130, Ex. A) After her discharge, Weekley continued to experience headaches. (Doc. 130, Ex. B) On July 23, Weekley went to bed around 9:00 p.m. (Doc. 130, Ex. B) The next morning, Plaintiff entered Weekley's room and discovered that she had passed away. (Doc. 130, Ex. B)

After Weekley's death, Dr. Raj Nanduri conducted an autopsy on her body on July 25, 2011. (Doc. 130, Ex. A) Dr. Nanduri listed the cause of death as "seizures, secondary to breach of cortex white matter and overlying dura of right frontal lobe during surgical repair of acquired old bony defect due to remote fracture." (Doc. 138, Ex. 2) Weekley's brain was also examined by Dr. Mary Case, a neuropathologist in St. Louis County for further examination. (Doc. 130, ex. C) Dr. Case determined that the probable cause of death was a seizure after finding that there had been a surgical breach of the cortex. (Doc. 130, Ex. D).

**Analysis**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels*

*Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. In ruling on a motion for summary judgment, the non-moving party's evidence "is to be believed," and all justifiable inferences drawn from it in the light most favorable to the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Summary judgment in favor of the party with the burden of persuasion is "inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Id*. at 553.

As an initial matter, Plaintiff concedes that paragraphs 9(c),(d),and(q) should be removed from the allegations of her Complaint. Accordingly, Summary Judgment is **GRANTED** as to those paragraphs.

For their motion, Defendants rely solely on Missouri law and argue that Plaintiff cannot prevail because her experts do not testify to a reasonable degree of medical certainty that, "but for" the actions or omissions of Defendants, Weekley would not have died. However, this Court has denied Defendants' Motion to Apply Missouri Law in this case. In a medical malpractice action in Illinois, the burden of proof is on the plaintiff to prove 1) the standard of care that a physician's conduct may be measured against, 2) a negligent failure to meet the standard, and 3) an injury proximately caused by the physician's negligence. *Massey v. U.S.*, 312 F.3d 272, 280 (7th Cir. 2002) (citing *Donais v. U.S.*, 232 F.3d 595, 598 (7th Cir.2000)). Expert testimony is required to determine the standard of care unless the physician's negligence is so apparent that it is within the common, everyday knowledge of a layperson. *Massey*, 312 F.3d at 280.

While Defendants' arguments in support of summary judgment challenge the sufficiency of the opinions of Plaintiff's experts to create a material issue of fact as to whether any breach of the standard of care by the Defendants caused the death of Chelsea Weekley, the Defendants' arguments do nothing more than address the weight and credibility to be afforded those opinions. Drs. Nanduri and Case surmised that seizure was the likely cause of death. Dr. Case determined that fresh blood and damage that she observed during her examination of Weekley's brain convinced her that the breach of the cortex occurred during the surgery. (Doc. 138, Ex. 51) Dr. Sprich disclosed opinions and provided testimony that Defendants' failure to detect the damage done during surgery and to follow up appropriately fell below the standard of care and led to the seizure that resulted in Weekley's death. (Doc. 138, Ex. 31,59) Further, Dr. Sprich testified that the seizure could have been prevented through actions of the Defendants, including Drs. Flannery and Sampath as well as Cardinal Glennon employees. (Doc. 138, Ex. 31, 59) This evidence demonstrates that genuine issues of material facts exist as to each element of Plaintiff's medical negligence claims, thereby precluding summary judgment.

Accordingly, Summary Judgment is **GRANTED** as to paragraphs c, d, and q of Plaintiff's Third Amended Complaint. As to all remaining allegations, Defendants' Motion for Summary Judgment (Doc. 129) is **DENIED**. Plaintiff's Motion to Supplement Pursuant to FRCP 56(d) (Doc. 136) is **DENIED** as moot.

**IT IS SO ORDERED.**

DATED:  May 26, 2015

/s/ **Staci M. Yandle**
STACI M. YANDLE
DISTRICT JUDGE